# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

KEVIN M. LARGE, etc.,          )
                                )
           Plaintiff,         )     Case No.: 1:09-cv-689
                                )
v.                                )     Judge Janet T. Neff
                                )
LVNV FUNDING LLC; et al.,      )
                                )
          Defendants.      )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

Date of Signing:  November 9, 2009

Respectfully Submitted,

LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., ALEGIS GROUP and PLAINS COMMERCE BANK, Defendants

By:   */S/ Clifford E. Yuknis*
        One of Their Attorneys

David M. Schultz
Clifford E. Yuknis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
312-704-3000

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................................................1

II. PLAINTIFF'S ALLEGATIONS ..........................................................................3

III. ARGUMENT .......................................................................................................4

    A. Pleading Standard..........................................................................................4

    B. Defendants LVNV, Resurgent and Alegis Are Not Subject To TILA. ........5

        1. TILA's Purpose..........................................................................................5

        2. Defendants LVNV, Resurgent and Alegis Are Not Creditors or "Card Issuers" Under TILA...................................................................................5

    C. There Was No TILA Violation. .....................................................................7

        1. Exhibit A Met TILA's Disclosure Requirements And Is Not False or Fraudulent ...................................................................................................7

        2. The Plaintiff Fails to Plead Facts Plausibly Supporting  the Existence of An Undisclosed Finance Charge.................................................................9

        3. Full Disclosure of All Finance Charges Was Not Required...................12

        4. Plaintiff Lacks Standing to Make a TILA Claim....................................14

    D. Plaintiff Fails to State A Claim Under The FDCPA......................................17

        1. The Complaint Fails to State a FDCPA Claim Against PCB Because PCB is Not a "Debt Collector."...........................................................................17

        2. Plaintiff's FDCPA Claim Fails to the Extent That His Allegations of False and Fraudulent Credit Terms Are Premised On TILA.........................19

        3. Plaintiff Does Not State A FDCPA Claim  Because Any Alleged TILA Violation Was Not False or Fraudulent...................................................21

        4. Plaintiff's Allegations of a False or Misleading  Statement Fail For Lack of Materiality.............................................................................................23

IV. CONCLUSION ................................................................................................24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

KEVIN M. LARGE, etc.,        )
                            )
          Plaintiff,      )     Case No.: 1:09-cv-689
                            )
v.                          )     Judge Janet T. Neff
                            )
LVNV FUNDING LLC; et al.,    )
                            )
          Defendants.    )

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS</u>

Defendants LVNV FUNDING, LLC ("LVNV"), RESURGENT CAPITAL SERVICES, L.P. (""Resurgent"), ALEGIS GROUP ("Alegis"), and PLAINS COMMERCE BANK ("PCB") (collectively "Defendants), by their undersigned attorneys, respectfully submit this Memorandum in Support of their Motions to Dismiss.

### I.    <u>INTRODUCTION</u>

Exhibit A to the Complaint displays that the Defendants offered Plaintiff an opportunity to settle his debt by transferring the settlement amount of $3,000 to a new credit card, with no extra payments or charges. Plaintiff had a $3,531.97 debt owing to LVNV. Defendants offered her an opportunity to settle. She could have obtained a new credit card, at no risk or charge, with the $3,000 settlement amount as its balance plus $50.00 of available credit. Plaintiff's debt to LVNV would have been paid off, and PCB would have reported the new credit card to the credit bureaus.

Plaintiff attempts in her Complaint to turn Exhibit A, describing these positive benefits, into a violation of federal law predicated upon several fallacies. Exhibit A displays that there was no charge or fee. Plaintiff is trying to analyze the balance transfer option set forth in the exhibit from the wrong perspective. Rather than focusing on the transaction from the debtor's point of view, his argument is based on what the Defendants paid to each other.

In so doing, Plaintiff commits another fallacy in his Complaint by misreading the Truth in Lending Act ("TILA") and Regulation Z. Exhibit A shows that the settlement amount of $3,000 is transferred to a new credit card. Thus, Exhibit A belies any valid claim that Plaintiff was charged, or paid, any amount other than the settlement amount on his new credit card. There was no charge or fee, and no failure to disclose. In spite of Plaintiff's earnest repetition of the labels "finance charge" or "prepaid finance charge," Plaintiff cannot avoid the fact that the Complaint's Exhibit A contains all the required TILA and Reg. Z disclosures and that there was no charge and no deception.

The Complaint also misreads the FDCPA. Only a material, false statement that would mislead an unsophisticated consumer is actionable. *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir. 2009); *Muha v. Encore Receivable Mgmt., Inc.,* 558 F.3d 623, 627-28 (7th Cir. 2009). Here, there were no undisclosed charges or fees, no violation of TILA or Reg. Z, and no misleading or false statements. Basically, Plaintiff is complaining that he did not obtain the "best possible" offer or deal to settle, when LVNV was not obligated to settle at all. *See Gully v. Van Ru Corp.,* 381 F.Supp.2d 766, 772 (N.D.Ill. 2005). The courts have rejected such reasoning in FDCPA cases. The court in *Gully* explained that a debt collector is not obligated to make settlement offers, and debtors are not entitled to receive them, observing (381 F.Supp.2d at 772):

> The FDCPA is not violated when a debtor does not settle this outstanding debt for the least amount of money.
>
> Despite plaintiffs' representations to the contrary, under their argument a settlement offer would be false and misleading unless it was the best possible offer – the greatest discount offer left open for the longest period of time. Otherwise, any offer on the table would not conform to what the debt collector was actually authorized to extend. But, as discussed above, such a result is contrary to the FDCPA's policy of encouraging the settlements of outstanding debts.

6471346v1 902936 59550

Finally, Plaintiff's purported FDCPA claim is predicated upon a nonexistent violation of TILA and Reg. Z.  This case is not the first attempt by a plaintiff to turn a settlement opportunity into a TILA and/or FDCPA violation.  *See, e.g., Neff v. Capital Acquisitions Mgmt., Inc.,* 352 F.3d 118 (7th Cir. 2003); *Jackson v. Midland Credit Mgmt., Inc.,* 445 F.Supp.2d 1015 (N.D.Ill. 2006), *aff'd Evory v. R.J.M. Acquisitions Funding, L.L.C.,* 505 F.3d 769 (7th Cir. 2007).  As in those cases, the Court should reject Plaintiff's attempt to turn the truthful, TILA-compliant Exhibit A, describing a beneficial program, into a FDCPA deception claim.

## II.  PLAINTIFF'S ALLEGATIONS

The Complaint alleges that Defendants devised and implemented the Visa Credit Card Program for the purpose of collecting delinquent debts owned by LVNV (¶ 29, Exhibit A). Under that program the debtor allegedly can transfer his non-performing account balance to a newly issued credit card (Complaint ¶¶ 28, 31, Exhibit A).  All the defendants, except Alegis, allegedly were debt collectors under the Fair Debt Collection Practices Act ("FDCPA") (Complaint ¶¶ 8, 18, 23, 27).

Plaintiff and other consumers allegedly were informed of the "refinancing program" by means of the material attached to his complaint as Exhibit A.  (Complaint ¶ 29). Exhibit A invites the debtor to:

> Pay your $3531.97 debt in full by balance transferring $3000.00 of your debt to a new Visa credit card, and when your credit card is issued, the remaining $531.97 will be forgiven.

The contents of Exhibit A allegedly were materially false and omitted material terms necessary to make the statements not misleading because Exhibit A did not disclose that PCB purportedly would withhold and retain a substantial sum from the proceeds of the credit extended (Complaint ¶¶ 40-42).  Exhibit A allegedly did not comply with TILA, 15 U.S.C. § 1601 *et seq.*

3

and Regulation Z, 12 C.F.R. §226 (Complaint ¶¶ 43-45, 49-50).  Plaintiff has not alleged that he

opened a credit card account or paid any fee under the program.

Exhibit A allegedly is required to comply with the FDCPA because it represents an

attempt to collect a delinquent consumer debt. (Complaint ¶ 32).  Exhibit A allegedly was false

and fraudulent because the document failed to include a description of the purported prepaid

finance charge. (Complaint ¶¶ 49-50).  Plaintiff alleges a violation of the FDCPA.  (Complaint

p.1).

## III. ARGUMENT

### A. Pleading Standard

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. _____, 129 S.Ct. 1937, 1949 (2009)

explained that the courts should apply the "[t]wo working principles" which underlie *Bell*

*Atlantic Corp. v. Twombly,* 550 U. S. 544 (2007) when assessing the adequacy of a complaint

under a motion to dismiss:

> [A] court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to the
> assumption of truth.  While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.  When there are well-
> pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief.

A plaintiff must allege significant facts to state a plausible claim for relief; the court "need not

accept 'threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements.' " *Williams v. Cass Cty. Sheriffs Dept.,* No. 1:09-CV-590, 2009 WL 2370713, at *3

(W.D. Mich. July 30, 2009) (attached as part of Exhibit 1; all unreported cases are attached

hereto as part of Exhibit 1).

### B. Defendants LVNV, Resurgent and Alegis Are Not Subject To TILA.

#### 1. TILA's Purpose.

Congress enacted TILA "with the broad purpose of promoting the informed use of credit by assuring a meaningful disclosure of credit terms to consumers." *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 864 (6th Cir. 2003); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998); 15 U.S.C. §§1601, *et seq.* TILA was not enacted to "deviously set traps by which windfalls could be reaped" for finding an alleged technical defect in a disclosure form which could not have conceivably influenced the choice of credit. *Andrucci v. Gimbel Bros., Inc.*, 365 F.Supp. 1240, 1243 (N.D. Pa. 1973) *aff'd* 505 F.2d 729 (3d Cir. 1974); *see Dixey v. Idaho First Nat. Bank*, 505 F.Supp. 846, 854-56 (D.C. Idaho 1981), *rev'd on other grounds* 677 F.2d 749 (8th Cir. 1982). The Act is a disclosure statute and its fundamental purpose is to provide information to facilitate comparative credit shopping and thereby the informed use of credit by consumers. *Brannam v. Huntington Mortg. Cos.*, 287 F.3d 601, 603 (6th Cir. 2002); *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006).

#### 2. Defendants LVNV, Resurgent and Alegis Are Not Creditors or "Card Issuers" Under TILA.

TILA imposes liability only on a "creditor" who fails to comply with any requirement. *Fraley v. Ocwen Federal Bank FSB*, No. 3: 99 CV 7748, 2000 WL 1182863, at *1 (N.D. Ohio June 1, 2000) (attached as part of Exhibit 1) *aff'd* 8 Fed. Appx. 509 (6th Cir. 2001); *Vallies*, 432 F.3d at 496; *Redic v. Gary H. Watts Realty Co.*, 762 F. 2d 1181, 1185 (4th Cir. 1985); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation*, 589 F.Supp.2d 987, 992 (N.D. Ill. 2008); *Robey-Harcourt v. Bencorp Finan. Co., Inc.*, 212 F.Supp.2d 1332, 1333 (W.D.Okla. 2002); *see McCoy v. Harriman Utility Bd.*, 790 F.2d 493, 496-97 (6th Cir. 1986) (summary

judgment in favor of non-TILA creditor was proper). When a plaintiff fails to allege a defendant is a creditor within the meaning of TILA, the plaintiff fails to allege claim for a TILA violation. For example, in *Swift v. First USA Bank,* No. 98 C 8278, 1999 WL 350847 (N.D. Ill., May 21, 1999) (attached hereto as part of Exhibit 1), the court dismissed the TILA claims as to defendants First Credit and Premiere:

> Swift does not allege that either First Credit or Premiere "extends…consumer credit" or is "the person to whom the debt…is initially payable," nor does it allege that either "offers a discount which is a finance charge."
>
> They are therefore not subject to TILA liability, and their motions to dismiss the TILA claim against them are granted. *Swift*, 1999 WL 350847, at *4.

Nowhere in Plaintiff's Complaint does he allege that any one of the Defendants LVNV, Resurgent or Alegis, is or was a creditor of Plaintiff; thus Plaintiff fails to state a claim. *See DeLeon v. Beneficial Constr. Co.*, 55 F.Supp.2d 819, 829 (N.D. Ill. 1999) (where plaintiff failed to allege that defendant Beneficial was a creditor, or regularly extended consumer credit, plaintiff's TILA claims were dismissed); *Smith v. Short Term Loans, LLC*, No. 99 C 1288, 2001 WL 127303, at *5 (N.D. Ill. Feb. 14, 2001) (attached hereto as part of Exhibit 1) (granting motion to dismiss TILA claim where individual defendants did not actually lend any money and thus were not creditors under TILA); *Garland v. Mobil Oil Corp.*, 340 F.Supp. 1095, 1098 (N.D. Ill. 1972) (Mobil not a creditor covered by TILA where it did not impose a finance charge under TILA). Defendants LVNV, Resurgent and Alegis could not have violated TILA, unless they are first considered a creditor under TILA, a threshold element that Plaintiff does not allege.

LVNV is not a creditor for purposes of TILA with respect to the credit card solicitation set forth in Exhibit A. LVNV is the owner of a debt that would be fully paid off if a settlement amount were transferred to the new credit card.

Originally, TILA recognized both "creditors" and "credit arrangers." In response to *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 157-58 (1981)(per curiam), Congress enacted the Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, 94 Stat. 132, 168 (1980) ("TILSRA"). TILSRA eliminated "credit arrangers" from the scope of TILA. *See Calica v. Indep. Mortg. Bankers, Ltd.,* CV 88-0452(RR), 1989 WL 117057, at *1 (E.D.N.Y. Sept. 28, 1989) (copy attached hereto as part of Exhibit 1). TILSRA amended the definition of a "creditor" to be a person who both (1) regularly extends, whether in connection with loans, sales of property or services or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. 15 U.S.C. § 1602(f). Plaintiff fails to allege facts that plausibly support either of these requirements.

Finally, while a "card issuer" can be subject to the requirements of § 226.5a, under § 226.2(a)(7) a card issuer is defined as "a person that issues a credit card or that person's agent with respect to the card." Plaintiff has not alleged facts that plausibly show that LVNV, Resurgent or Alegis was the card issuer (which was PCB) or that they were in any way PCB's agent with respect to the card.

### C. There Was No TILA Violation.

#### 1. Exhibit A Met TILA's Disclosure Requirements And Is Not False or Fraudulent

The document in question contained all of the disclosures that 15 U.S.C. §§ 1637(a) and (c) and Regulation Z require. Regulation Z, § 226.5a(a) provides that for direct mail solicitations of credit card offers, the card issuer shall disclose, on or with the solicitation that is mailed to

6471346v1 902936 59550

consumers, the disclosures described in paragraph (b)(1) through (7) of that section in a prominent table commonly referred to as the "Schumer box" (although a credit card issuer need not include the information described in paragraph (b)(7) of that section).   Regulation Z, § 226.5a(a) also provides that the disclosures described in paragraphs (b)(8) through (11) of § 226.5a shall be provided either in the Schumer box or clearly and conspicuously elsewhere on or with the solicitation.

Section 226.5a(b) describes the types of disclosures that need to be included with a solicitation:

| | |
|---|---|
| (1) | Annual percentage rate (with the annual percentage rate for purchases disclosed in at least 18-point type); |
| (2) | Fees for issuance or availability; |
| (3) | *Minimum finance charge, which means any minimum or fixed finance charge that could be imposed during a billing cycle;* |
| (4) | Transaction charges; |
| (5) | Grace period; |
| (6) | Balance computation method; |
| (7) | Statement on charge card payments (not required for credit card issuer); |
| (8) | Cash advance fee; |
| (9) | Late payment fee; |
| (10) | Over-the-limit fee; and |
| (11) | Balance transfer fee. |

The Schumer box in Exhibit A to the Complaint contains all of the elements required to be disclosed therein for a credit card solicitation.   Plaintiff does not allege that any of the above-described terms are missing. Instead, he claims that Exhibit A "contains what purports to be a complete and comprehensive list of all finance charges and fees applicable to the account." (Complaint ¶¶ 35, 49).   However, Exhibit A does not support this conclusion because there is, in fact, no such statement or claim contained anywhere therein.

6471346v1 902936 59550

Moreover, Regulation Z does not require that direct mail credit card solicitations contain a "complete and comprehensive list of all finance charges and fees applicable to the account." Direct mail credit card solicitations need only provide those disclosures specified in § 226.5a(b) and (c). The only "finance charge" that needs to be disclosed in a credit card solicitation is the "minimum or fixed finance charge that could be imposed during a billing cycle," which was clearly disclosed in the Schumer box contained in Exhibit A. 12 C.F.R. § 226.5a(b)(3).

Furthermore, none of the Defendants was allowed to place any non-specified information within the Schumer box. *See* Federal Reserve Board ("Board") Official Staff Comment § 226.5a(a)(2), cmt. 4 (stating, "[t]he table containing the disclosures required by § 226.5a should contain only the information required or permitted by this section. Other credit information may be presented on or with an application or solicitation, provided such information appears outside the required table." [emphasis added]) (copy attached as Exhibit 2). Thus, the information that Plaintiff asserts should have been included in Exhibit A could not legally be placed in the Schumer box. And the inclusion of any other information outside the Schumer box was purely voluntary. Therefore, none of the Defendants can be found liable for not including that information which Plaintiff claims should have been included.

### 2. The Plaintiff Fails to Plead Facts Plausibly Supporting the Existence of An Undisclosed Finance Charge.

Plaintiff has not pled facts that plausibly support his conclusion that the Defendants failed to disclose a "prepaid finance charge" to him. (Complaint ¶49). The Defendants offered the Plaintiff the opportunity to settle his delinquent account for less than the full amount owed. (Exhibit A). Plaintiff could pay in cash or he could establish a credit card account with PCB. Here, there is no prepaid finance charge since the Plaintiff would be credited for the full settlement amount of $3,000 on his delinquent account after establishing a credit card account

with PSB.  Plaintiff's Exhibit A (at p. 1) states that his debt to LVNV is paid "in full" by balance transferring $3,000 of his debt to the new credit card.  Plaintiff's full $3,000 settlement amount would be transferred to the newly established credit card account with PCB.

Exhibit A shows that there is nothing withheld from the debtor, and the debtor pays no other charge or fee.  The debtor's balance sheet reflects that her liability to LVNV is paid off and is replaced by a lower liability for the $3,000 settlement amount transferred to the new credit card.

Exhibit A (at p.2) in the paragraph captioned "Debt Balance Disclosure," provides that if Plaintiff accepted the balance transfer offer, Resurgent will honor the debt balance of $3,531.97. Exhibit A (at p.2 first paragraph) provides that "[w]hen you accept this offer, collection activity on your old debt will stop."  The document (at p. 2 third paragraph) also provides that if the Plaintiff chose not to make a payment or charge on his new credit card during the first three billing cycles (approximately 90 days), the new credit card would be cancelled and his "old debt will be reinstated (including the reversal of any old debt forgiveness granted in connection with the issuance of the new credit card").  Thus, before the balance transfer, Plaintiff still owes LVNV the full amount of his debt.  However, his debt to LVNV is paid in full by balance transferring $3000 of the debt to the new card.  Regardless of the amount disbursed to LVNV (Complaint ¶ 42), nothing is withheld from the Plaintiff.

The division of the $3,000 settlement among the Defendants is not a charge upon the Plaintiff, who would have paid no extra charge or fee.  If LVNV chooses to accept a discount from PCB, the cost of the discount is borne by LVNV, the recipient of the proceeds.  The cost of the discount is not imposed upon the consumer and is not a charge or fee.

6471346v1 902936 59550

By way of analogy, when a customer pays $100 for merchandise using a credit card, he has paid $100. The store will not keep the entire $100 since it will pay an interchange fee to the card issuer. But the customer still paid only $100.

The situation complained of by Plaintiff, if true, would be no different than where a discount is taken for a credit obligation assigned by a seller-creditor to another party. The discount is not a finance charge as long as the discount is not separately imposed on the consumer. Board Official Staff Interpretation 2, Regulation Z § 226.4(a) (attached as Exhibit 3).

Thus, Plaintiff's allegations that a prepaid finance charge will be imposed are refuted by the description of the Visa credit card program contained in Exhibit A. Plaintiff refers to Regulation Z, § 226.2(a)(23) as requiring that the amount disbursed by the new lender be included in the amount financed, and that any consideration withheld by the lender be treated as a finance charge. (Complaint ¶¶ 45, 47-48). Regulation Z §226.2(a)(23) defines "prepaid finance charge" as "any finance charge paid separately in cash or by check before or at consummation of a transaction, or withheld from the proceeds of the credit at any time." The term "credit" is defined by TILA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). Exhibit A shows that no credit proceeds are withheld at any point.

Further, under Exhibit A, there is no separate payment over the $3,000 that is transferred to the credit card. To the contrary, Exhibit A (at p.1) states that Plaintiff should contact Resurgent to sign up for the Visa card, that $3,000 of the debt would then be transferred to the Visa card, and that there would be $50 of available credit and additional credit created as Plaintiff would make his required monthly payments. Plaintiff's debt to LVNV would be paid off "in full." Exhibit A at p. 1. Nor does Plaintiff allege that he would have had any obligation

to pay LVNV any additional amount as a result of any proceeds allegedly being retained by PCB.

Thus, Plaintiff's allegation regarding the amount of money disbursed to LVNV to pay Plaintiff's debt (Complaint ¶ 42) does not plausibly support the conclusion of a prepaid finance charge imposed on the consumer. The full $3,000 settlement amount is transferred to the credit card and Plaintiff's debt is paid off. Exhibit A displays that there is no separate charge imposed upon Plaintiff over and above the $3,000 settlement amount transferred to the credit card.

### 3. Full Disclosure of All Finance Charges Was Not Required.

Congress delegated the responsibility for prescribing "regulations to carry out the purposes of" TILA to the Board. 15 U.S.C. § 1604(a); *Household Credit Servs. v. MBNA,* 541 U.S. 232, 238 (2004). In response, the Board promulgated "Regulation Z," 12 C.F.R. § 226 and also published a comprehensive "Official Staff Interpretation," 12 C.F.R. pt. 226 Supp. I, commonly referred to as the Official Staff Commentary. Both of these measures were published in accordance with "the broad powers that Congress delegated to the Board to fill gaps in the statute." *Ortiz v. Rental Management, Inc.*, 65 F.3d 335, 339 (3d Cir. 1995). In light of Congress' explicit delegation of authority to the Board, courts must defer broadly to the Board's interpretation of the statute and its own regulations, including the Official Staff Commentary. Unless demonstrably irrational, Board staff opinions construing TILA or Regulation Z should be dispositive. *Household Credit Servs.*, 541 U.S. at 239, 242-45; *Inge v. Rock Finan. Corp.*, 281 F.3d 613, 624 (6th Cir. 2002) quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Begala,* 163 F.3d at 950.

Here, the only relevant regulation is Regulation Z, § 226.5a, which provides that a credit card issuer must disclose certain specified information in solicitations or applications. Exhibit A complies with this Regulation; it provides the information required under § 226.5a. However,

Plaintiff apparently has conflated the requirement that a creditor provide the information required under § 226.6, with the disclosures required under § 226.5a. They are not the same. As Board Official Comment 2 to § 226.5a makes clear, a card issuer may, if it wishes, provide all the information required under § 226.6 at the time it provides the disclosures required under § 226.5a, but a card issuer is under no obligation to do so (copy of Official Comment 2 is attached as Exhibit 4). Moreover, providing the disclosures under § 226.6 will not substitute for giving the disclosures required under § 226.5a. *Id.* Furthermore, as argued above, there was no finance or other charge to disclose under § 226.6.

A creditor is obligated to fully disclose all applicable "finance charges" only within its "initial disclosures" which must be given only before the first transaction. 12 C.F.R. §§ 226.5(b), 226.6. Exhibit A was not required to contain the information set forth in §226.6. Yet, Plaintiff implies that Defendants were nevertheless still required to describe all applicable finance charges in Exhibit A, despite the fact that no such obligation exists under § 226.5a and even though he never opened an account, used the card, or paid a fee.

Exhibit A refutes Plaintiff's implication regarding the initial disclosures, which must be given only before the first transaction under §226.6. Exhibit A (at p. 2) recites that when Plaintiff would receive the new card, he would have $50.00 of available credit. It provides that by making timely and consistent monthly payments the Plaintiff will build additional credit on his credit card. Exhibit A (at p. 2) explains:

> Your minimum monthly payment will be equal to 3% of the balance due on your credit card, or $20, whichever is greater. Your first minimum payment of $90.00 will be due approximately 20 days after you receive your first credit card statement.
>
> Your new credit card account will be reported to the credit bureaus once you make a payment or charge on your new credit card. If you choose not to make a payment or charge on your new credit card during the first three

6471346v1 902936 59550

> billing cycles (approximately 90 days), (i) your new credit card will be
> cancelled, (ii) your old debt will be reinstated (including the reversal of
> any old debt forgiveness granted in connection with the issuance of the
> new credit card), and (iii) collection activity on your old debt may resume.

Thus, it is evident from Exhibit A that no "transaction" would occur until such time as Plaintiff actually made a charge or payment. Plaintiff does not allege that he made any such charge or payment, and thus there was no transaction. Under the program described in Exhibit A, the initial disclosures required such §226.6 could be given at any time up until the time of charge or payment. However, Plaintiff does not allege that he applied for and received a credit card, let alone ever made a charge or payment. Since no "transaction" occurred, the requirement of delivery of §226.6 initial disclosures was never triggered. In any event, there was no finance or other charge to disclose.

Moreover, there is a claim under TILA, 15 U.S.C. § 1637(a) only if the creditor fails to make the initial disclosures and an individual actually opens an account. *See, e.g., Muro v. Target Corp.,* 580 F.3d 485, 493-94 (7th Cir. 2009) *aff'g* 250 F.R.D. 350 (N.D. Ill 2007) (§ 1637(a) is satisfied when a card issuer makes the necessary disclosures before the card is activated, before any fees are incurred, and before any charges are made to the new account; case under §§ 1637(a) and (c) dismissed where none of these events took place). Thus, Exhibit A contained all the necessary disclosures under TILA and Regulation Z.

#### 4. Plaintiff Lacks Standing to Make a TILA Claim

Plaintiff has no TILA claim for the additional reason that he cannot recover under that statute and lacks standing to bring this suit. He cannot recover TILA statutory damages, which are available for only certain specifically enumerated violations. 15 U.S.C. § 1640(a)(2); *Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 990-92 (7th Cir. 2000); see *Dykstra v. Wayland Ford, Inc.,* 134 Fed. Appx. 911, 916 (6th Cir. 2005); *Baker,* 349 F.3d at 869. None of the

14

specified violations apply here.  As argued above (pp. 7-14), there was no violation under 15 U.S.C. § 1637(a) (which is referenced in 15 U.S.C. § 1640).  Among other matters, Plaintiff did not open an account.  There is no claim under Section 1637(a), which requires that certain initial disclosures be made by a creditor "before opening any account under an open end consumer credit plan," if an individual does not actually open an account, which is the situation here.  *See Muro,* 580 F.3d at 493-94.

Furthermore, Plaintiff does not plead that he relied on Exhibit A, subscribed to a Visa credit card, paid any money or suffered any injury.  TILA, 15 U.S.C. § 1640(a)(1), provides for recovery of "any actual damage sustained by such person as a result of the failure" to comply with certain parts of TILA.  *See Haun v. Don Mealy Imports, Inc.,* 285 F. Supp. 2d 1297, 1303-1304 (M.D. Fla. 2003) (no actual damages).  Since Plaintiff suffered no actual damages, and cannot recover statutory damages, he has no TILA claim.  *United States v. Petroff-Kline,* 557 F. 3d 285, 296-97 (6th Cir. 2009); *Peters v. Jim Lupient Oldsmobile,* 220 F.3d 915, 916-17 (8th Cir. 2000) (causation and actual damages required); *Hamilton v. O'Connor Chevrolet, Inc.,* No. 02 C 1897, 2004 WL 1403711, at *6-7 (N.D.Ill. June 23, 2004) (attached as part of Exhibit 1) (no actual damages); *see Stout v. J.D. Byrider,* 228 F.3d 709, 718 (6th Cir. 2000) (detrimental reliance and damages required); *In re Ferrell,* 539 F.3d 1186, 1192 (9th Cir. 2008) (no detrimental reliance); *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1028 (8th Cir. 2001) (detrimental reliance is an element of TILA claim for actual damages; plaintiff must present evidence to establish causal link between TILA noncompliance and his damages); *Perrone v. Gen'l Motors Accept. Corp.,* 232 F.3d 433, 440 (5th Cir. 2000) (detrimental reliance required); *Nevarez v. O'Connor Chevrolet, Inc.,* 303 F.Supp.2d 927, 934-35 (N.D.Ill. 2004) ("causal connection" required; no actual damages).

6471346v1 902936 59550

Plaintiff's Complaint cites §§ 1637(a) and (c) of TILA (¶ 43). However, there is no claim under Section 1637(a), which requires that certain initial disclosures be made "before opening any account under an open end consumer credit plan," if an individual does not open an account. *See, e.g., Muro*, 580 F.3d at 493-94; *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 21 (7th Cir. 1976) (claim for incomplete, inaccurate or misleading disclosure under § 1637(a) did not arise until the date on which a finance charge was imposed); *Liberman v. Spiegel*, 493 F.Supp. 1029, 1033 (N.D. Ill. 1980) (the initial disclosures required by § 1637(a) must occur at "some time before the first transaction takes place"). Because Plaintiff has not alleged that he opened an account, he does not have standing to sue under § 1637(a).

As to § 1637(c), Section 1640(a) of TILA, which sets forth the statute's civil liability provisions, provides that "[i]n connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637 (c)(4)(A)(i) of this title or who uses the credit card or charge card." Here, Plaintiff does not allege facts plausibly supporting that any of the Defendants LVNV, Resurgent or Alegis is a card issuer as defined in Regulation Z, §226.2(a)(7).

Moreover, to meet the standing requirements under § 1640 with respect to § 1637(c) (which governs written invitations such as those found in Exhibit A), Plaintiff would have to fulfill both of the following requirements:  (a) he must be a cardholder and (b) he must either have paid a fee in connection with the Visa credit card or have used the credit card. Plaintiff has not pled any of these statutory requirements. Consequently, he lacks standing to sue under § 1640 with respect to § 1637(c). *See, e.g. Muro*, 580 F.3d at 493-94 (no TILA violation under § 1637(c) because plaintiff never activated the Visa card, never incurred any fees on the card and

never made any charges to the card). Thus, Plaintiff is not entitled to statutory or actual damages under § 1640 and has no standing under TILA § 1640 to bring a TILA claim

### D. Plaintiff Fails to State A Claim Under The FDCPA

#### 1. The Complaint Fails to State a FDCPA Claim Against PCB Because PCB is Not a "Debt Collector."

The FDCPA applies only to "debt collectors" and not to "creditors." *See MacDermid v. Discovery Finan. Servs.,* 488 F.3d 721, 734-35 (6th Cir. 2007) (Discover card issuer was not a debt collector); *Montgomery v. Huntington Bank,* 346 F.3d 693, 698-99 (6th Cir. 2003) (bank lender was not a debt collector). The categories of "debt collector" and "creditor" are mutually exclusive under the FDCPA. *See Lewis v. ACB Business Servs.,* 135 F.3d 389, 412 (6th Cir. 1998) (Amex card issuer was not a debt collector); *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003); *Greenland v. Van Ru Credit Corp.,* No. 5:06-cv-2, 2007 WL 4245409, at *4 (W.D. Mich. Nov. 29, 2007) (attached as part of Exhibit 1); *Munson v. Countrywide Home Loans, Inc,* No. 08-13244, 2008 WL 5381866, at *8 (E.D.Mich. Dec. 17, 2008) (attached as part of Exhibit 1). The rationale for the distinction between "debt collectors," to whom the FDCPA applies, and "creditors," to whom the FDCPA does not apply, was recently explained in *Ruth v. Triumph Partnerships*, 577 F. 3d 790, 797 (7th Cir. 2009) (quoting *Schlosser,* 323 F.3d at 536):

> Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts" S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them."

Here, PCB allegedly participated in:

> "[O]ffering the plaintiff an opportunity to discharge [$3,000 of] the defaulted debt to a new credit account. If the debtor agreed to such

17

> an arrangement, the new account would not be subject to the
> FDCPA ....”

*Ruth*, 577 F. 3d at 799, fn. 3. Thus, an account created as a result of a consumer's acceptance of

an offer to discharge a debt by transferring it to a new credit card account “would not be subject

to the FDCPA.” *Id.*   Therefore, Plaintiff's allegations against PCB do not even implicate the

FDCPA. *See Bailey v. Security Nat'l Servicing Corp.,* 154 F.3d 384, 387 (7th Cir. 1998)

(holding that a party attempting to collect a payment currently due on a renegotiated payment

plan is not a debt collector because it is not attempting to collect a debt in default).

PCB's role, as described in Exhibit A on which the Complaint relies, is the issuance of a

new Visa Credit Card account, and thus falls squarely within the definition of a creditor under

the FDCPA, not that of a debt collector.  Recipients of the mailer are instructed to call Resurgent.

Exhibit A.  According to Exhibit A, a cardholder may use the Visa credit card everywhere Visa

credit cards are accepted.  The Visa Credit Card Program, as described in Exhibit A, specifically

contemplates repeated use by the cardholder.  As the potential issuer of a Visa card account, PCB

is a “creditor” for purposes of the FDCPA; that is, a “person who offers or extends credit

creating a debt or to whom a debt is owed . . .” 15 U.S.C. § 1692a(4).  Accordingly, PCB is

excluded from the definition of “debt collector” under the FDCPA, and the FDCPA's

requirements have no application to PCB. *See* 15 U.S.C. § 1692a(6); *Montgomery,* 346 F.3d at

698 (bank lender was not a debt collector).

The Complaint's conclusory allegations that PCB is a debt collector (¶ 27) are disproved

by the description of PCB's role contained in the document on which the Complaint relies and

Plaintiff fails to state an FDCPA claim. *See Twombly*, 550 U.S. at 555 (the pleading of legal

labels and conclusions is insufficient to state a claim); *Iqbal*, 129 S.Ct. at 1949 (a court is not

required to accept legal conclusions as true); *Montgomery,* 346 F.3d at 698 (granting Rule

12(b)(6) motion since allegations showed defendant bank was not a debt collector; court need not accept as true legal conclusions or unwarranted factual inferences ) (citation omitted); *Lewis*, 135 F.3d at 39-40 (granting Rule 12(b)(6) motion since allegations showed Discover was not a debt collector).

Finally, PCB, not being a debt collector, cannot be held vicariously liable under the FDCPA. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *King v. Ocwen*, No. 07-11359, 2008 WL 111260, at *13 n.3 (E.D. Mich. Jan. 8, 2008) (attached as part of Exhibit 1). As there is no basis set forth in the Complaint or Exhibit A from which to conclude that PCB is a "debt collector" subject to the FDCPA, the Complaint must be dismissed.

### 2. Plaintiff's FDCPA Claim Fails to the Extent That His Allegations of False and Fraudulent Credit Terms Are Premised On TILA.

Plaintiff fails to allege facts plausibly showing any false or fraudulent communication or practice prohibited under the FDCPA. The Complaint alleges that Defendants violated the FDCPA because they failed to disclose a supposed prepaid finance charge purportedly as required by TILA and Regulation Z (¶¶ 49-50). Plaintiff's entire basis for his FDCPA claim is his assertion that Defendants did not comply with TILA or Regulation Z.

However, as argued above, Plaintiff has not alleged that Defendants LVNV, Resurgent and Alegis are creditors subject to TILA or facts plausibly suggesting that these Defendants are card issuers as defined in Regulation Z, § 226.2(a)(7). Furthermore, Exhibit A contained all of the required disclosures under TILA and Regulation Z, and Plaintiff lacks standing to bring a TILA claim. Since there was no violation of TILA or Regulation Z, Defendants did not act in a false or fraudulent manner under the FDCPA. *See Evory v. R.J.M. Acquisitions Funding L.L.C.*, 505 F.3d 769, 776-77 (7th Cir. 2007) (a court may dismiss a claim of deception under the FDCPA when there is nothing "deceptive-seeming about [the text of] the communication."

The FDCPA was intended to eliminate "abusive debt collection practices." 15 U.S.C. §1692. Other than his claim that Exhibit A failed to furnish all the requisite TILA and Regulation Z disclosures, Plaintiff has not identified any improper debt collection practice. Plaintiff bases his FDCPA claim on a non-existing failure to meet a nonexisting requirement under TILA to provide information on a non-existing finance charge in Exhibit A. Thus, Plaintiff improperly seeks to piggyback his FDCPA claim on a "nonexistent TILA violation." *Robb v. Capital Acquisitions & Mgt. Co.*, No. 02 C 4829, 2002 WL 31654941, at \*5 (N.D. Ill. Nov. 21, 2002) (attached as part of Exhibit 1) (dismissing FDCPA claim, the court determining that there was no TILA violation and there were no other allegations of violations of the FDCPA); *see Neff*, 352 F.3d at 1120-21 (affirming dismissal of TILA and FDCPA claims).

Plaintiff, no doubt realizing that he has no standing to make a TILA claim, is, in effect, trying to impose additional disclosure requirements under TILA than are actually required, by pleading under the FDCPA. This Plaintiff validly cannot do.

Further, in his attempt to state a FDCPA claim based upon TILA, Plaintiff views the transaction backward, focusing on the Defendants' allocation of proceeds amongst themselves. Basically, Plaintiff is complaining that he did not obtain the best settlement offer or deal possible. However, LVNV was not obligated to settle at less than 20% of the outstanding debt it was owed, or for any amount whatsoever (Complaint ¶ 42). Moreover, the fact that Plaintiff may not have obtained the best possible settlement deal is beside the point, and is not a violation of TILA or the FDCPA. *See Gully,* 381 F.Supp.2d at 722.

Plaintiff's claim is closely analogous to the rejected claims in the series of settlement letter cases. The courts repeatedly rejected FDCPA claims asserting that because the defendant could, or would, have settled for less than the offer in a collection letter, the defendant's letter

20

was misleading. *Jackson,* 445 F.Supp.2d at 1020 (N.D.Ill. 2006) *aff'd Evory,* 505 F.3d 769; *Dupuy v. Weltman, Wienberg & Reis Co.,* 442 F.Supp.2d 822, 828 (N.D.Cal. 2006); *Jackson v. Nat'l Action Finan. Servs., Inc.,* 441 F.Supp.2d 877, 886 (N.D.Ill. 2006) *aff'd Evory,* 505 F.3d 769; *Hernandez v. Alfini, Inc.,* 428 F.Supp.2d 776, 781-82 (N.D.Ill. 2006); *Johnson v. AMO Recoveries,* 427 F.Supp.2d 953, 956 (N.D.Cal. 2005); *Headen v. Asset Acceptance, LLC,* 383 F.Supp.2d 1097, 1103-1107 (S.D.Ind. 2005; *Gully v. Arrow Fin. Serv., Inc.,* No. 04 C 6849, 2006 WL 3486815, at *2, *3, *4 (N.D.Ill. Dec. 1, 2006) (attached as part of Exhibit 1); *Hancock v. Receivable Management Solutions, Inc.,* No. C 06-1365 CW, 2006 WL 1525723, at *4 (N.D.Cal. May 30, 2006) (attached as part of Exhibit 1); *Kiliszek v. Nelson, Watson & Assoc.,* No. 3:04 CV 2604, 2006 WL 335788, at *6 (M.D.Pa. Feb. 14, 2006) (attached as part of Exhibit 1); *Sarder v. Academy Collection Serv., Inc.,* No. CV 02-2486 NG VVP, 2005 WL 615831, at *2, *3 (E.D.N.Y. March 3, 2005) (attached as part of Exhibit 1).

### 3. Plaintiff Does Not State A FDCPA Claim Because Any Alleged TILA Violation Was Not False or Fraudulent

Plaintiff's apparent position is that an alleged debt collector automatically violates the FDCPA by violating another statute. Plaintiff is wrong. In *Beler v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.,* 480 F.3d 470, 473-474 (7th Cir. 2007), a debtor argued that FDCPA § 1692f should be read as prohibiting any collection practice that runs afoul of other laws, such as the state and federal rules that made the funds exempt from collection efforts. The court rejected this argument:

> § 1692f creates its own rules (or authorizes courts and the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law. This is not a piggyback jurisdiction clause. If the Law Firm violated the Social Security Act, that statute's rules should be applied. Likewise if the Law Firm violated Illinois law. Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship. *Id.* at 474.

The court held that causing the bank to freeze exempt funds did not violate § 1692f because nothing in § 1692f's general or specific prohibitions "implies that federal courts should make new rules that change how state-court judgments are collected." The court rejected the plaintiff's argument that it should use FDCPA § 1692f "to enforce existing state and federal laws exempting certain assets from execution." *Id.* at 474. Thus, Plaintiff is foreclosed from stating an FDCPA claim based solely on Defendants' alleged violation of TILA. Nothing in § 1692e or § 1692f regulates disclosures under TILA and Regulation Z.

Section 1692e contains a general prohibition against deceptive collection practices followed by a list of examples of prohibited practices. Section 1692f contains a general prohibition against unconscionable and unfair collection practices followed by a list of specific practices that are deemed unconscionable and violative of the statute.

As in *Beler*, nothing in the general or specific prohibitions contained in § 1692e and § 1692f suggests that these provisions regulate TILA disclosures. As a result, if Defendants had violated TILA and Regulation Z, which Defendants deny, that conduct would not automatically violate § 1692e and § 1692f. Rather, Plaintiff would have to show that the conduct that violated TILA and Regulation Z also amounted to a misleading or unconscionable collection practice under the FDCPA. However, Plaintiff does not allege that the document was misleading in any respect other than the fact that it allegedly did not comply with TILA and Regulation Z. Thus, as in *Beler*, Plaintiff has not stated a claim for an FDCPA violation based on the violation of an unrelated statute, and fails to state a claim. *See Rosales v. Unifund CCR Partners*, No. 08 C 3533, 2008 WL 5156681, at *2 (N.D. Ill. Dec. 5, 2008) (attached as part of Exhibit 1) (dismissing claim that debt collector violated the FDCPA by submitting an affidavit in state court

6471346v1 902936 59550

which violated Illinois evidence rules; "Rosales has not pled a FDCPA claim merely by listing

the act in the complaint and calling her claim a 'FDCPA – Class Claim'.").

Further, Plaintiff's allegations do not even implicate the FDCPA as to PCB. *Ruth,* 577

F.3d at 799 fn.3; *see* pp. 17-19, above. Thus the Complaint fails to state a claim for violation of

the FDCPA against any Defendants.

### 4. Plaintiff's Allegations of a False or Misleading Statement Fail For Lack of Materiality

Even if the Exhibit A to the Complaint did not comply with TILA, such non-compliance

was not material under Plaintiff's allegations. The Sixth Circuit explained in *Miller,* 561 F.3d at

596:

> We also reject Miller's claim on materiality grounds. Writing for the Seventh Circuit, Judge Easterbrook recently observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." *Hahn v. Triumph P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009) (citing *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *Neder v. United States* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Seeing no "reason why materiality should not equally be required in an action based on § 1692e," Judge Easterbrook found a statement "false in some technical sense" immaterial. *Id.* (quoting *Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 646 (7th Cir. 2009)). "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Id.* We agree. Miller, along with the dissent, relies on a too technical reading of the complaint. Appraising the complaint in a common sense way convinces us that, just as Miller "pretty much" understood JBR's language, so too would the least-sophisticated consumer.

Here, the non-listing of an alleged prepaid finance charge is immaterial. It neither

contributes to, nor undermines, helping consumers to choose intelligently. *See Hahn v. Triumph*

*P'ships LLC,* 557 F.3d 755, 757 (7th Cir. 2009). Since the alleged TILA violation is not

material, it cannot support an FDCPA claim. *See Miller,* 561 F.3d at 596; *Muha,* 558 F.3d at

628; *Rodriguez v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* No. 08 C 6198, 2009 WL 631613

(N.D. Ill. March 10, 2009) (attached as part of Exhibit 1) (dismissing FDCPA case premised on

immaterial text). Plaintiff did not sign up for, or pay, anything. Plaintiff was not misled,

confused or deceived.  Instead, he hired lawyers.  The non-listing of the amount withheld was clearly immaterial.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., ALEGIS GROUP and PLAINS COMMERCE BANK, respectfully request that this Court grant their Motions to Dismiss with prejudice.

Date of Signing: November 9, 2009

Respectfully Submitted,

LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., ALEGIS GROUP and PLAINS COMMERCE BANK, Defendants

By: */S/ Clifford E. Yuknis*
     One of Their Attorneys

David M. Schultz
Clifford E. Yuknis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081
312-704-3000

6471346v1 902936 59550