UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN M. LARGE,

       Plaintiff,

v.

LVNV FUNDING, LLC, *et al.*,

       Defendants.

_____/

Case No. 1:09-cv-689

HON. JANET T. NEFF

## **OPINION AND ORDER**

Plaintiff filed this case against defendants, alleging that their letter-offer to settle his purported debt failed to disclose information required by the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and that the letter-offer therefore violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Defendants move to dismiss plaintiff's complaint under FED. R. CIV. P. 12(b)(6), arguing that plaintiff has not stated a claim under either federal act (Dkts 30 & 31). Plaintiff filed a response in opposition to defendants' motions (Dkt 33), and defendants filed a reply (Dkt 34). Both plaintiff and defendants have also since provided this Court with new legal authorities to consider (Dkts 39, 43). Having fully considered this matter, the Court holds that even if plaintiff may properly state a claim under the FDCPA by alleging a violation of TILA, plaintiff has not alleged a disclosure violation under the TILA to support his premise of a "false statement" under the FDCPA. Therefore, defendants' Motions to Dismiss are properly granted.

# I. BACKGROUND

Plaintiff purportedly had a $3,531.97 debt owing to Citibank, a debt that was purchased by LVNV Funding, LLC (LVNV), a Las Vegas, Nevada company (Compl. ¶ 13, Ex. A). Plaintiff alleges that LVNV purchases defaulted debts and either attempts to collect on the purchased debts itself or works with other agencies, such as co-defendants Alegis Group, LLC (Alegis) and Resurgent Capital Services L.P. (Resurgent) to collect on the debts (*id.* ¶ 15). Plaintiff further alleges that Alegis is the general partner of Resurgent and that Resurgent shares the same owner as LVNV (*id.* ¶¶ 9, 21). The fourth defendant, Plains Commerce Bank (PCB), is a bank located in South Dakota (*id.* ¶ 24) that apparently has no corporate relationship to the other three defendants.

In late August 2008, plaintiff received a letter from Resurgent offering him "an opportunity to receive a pre-approved Visa card [issued by PCB] and address your debt at the same time" (Compl. ¶¶ 28, 37, Ex. A).[1] The "credit card program" required the debtor to "pay your $3531.97 debt in full by balance transferring $3000.00 of your debt to a new Visa credit card, and when your credit card is issued, the remaining $531.97 will be forgiven" (Compl., Ex. A). The offer further indicated that "[c]ollection activity on your old debt will stop if you accept this offer" (*id.*). The offer included a table of "IMPORTANT RATE AND FEE DISCLOSURES" (*id.*).

Plaintiff does not allege that he opened a credit card account or paid any fee under the program. Plaintiff alleges that "[m]ost or all of the debts that were the subject of the refinancing program were beyond the applicable statute of limitations, unprovable, barred by the statute of frauds, or otherwise legally unenforceable" (Compl. ¶ 30). The offer indicated that "[i]f you pay

---

[1]This letter was attached as an exhibit to plaintiff's complaint and is deemed to be a part of the pleadings for purposes of deciding these motions to dismiss. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001).

your debt in full by balance transferring $3000.00 of your debt to a new Visa credit card, the $3000.00 transferred and any charges on your new Visa credit card will be valid, enforceable and can be recovered by any lawful means, even if the age of your debt being paid by the balance transfer would prevent a lawsuit from being filed to collect it" (Compl., Ex. A).

On July 27, 2009, plaintiff filed this lawsuit, alleging that the four defendants, acting in concert, had devised a refinancing program for debtors that violated both the FDCPA and the TILA. Plaintiff asserts that the offer was required to comply with the FDCPA because the offer represents an attempt to collect a delinquent consumer debt (Compl. ¶ 32). Plaintiff asserts that the offer was also required to comply with the TILA and 12 C.F.R. § 226.1 *et seq.* ("Regulation Z") because the collection of the debt was to be effectuated by refinancing the debt (*id.* ¶ 33).

Plaintiff complains that "[n]owhere in [the offer] is there any mention of any prepaid finance charge to be deducted from the proceeds of the credit" (Compl. ¶ 36). Specifically, the offer "did not disclose that PCB would withhold a substantial sum from the proceeds of the credit extended, indeed, amounting to most of the credit extended" (*id.* ¶ 41). Plaintiff asserts, based on "industry practice," that less than 20 percent of the amount of credit PCB extended would be disbursed to LVNV, with the balance retained by PCB (*id.* ¶ 42). According to plaintiff, "[t]he amount withheld by PCB is a finance charge, required to be disclosed as such in [the offer] by TILA and Regulation Z" (*id.* ¶ 44).

Plaintiff seeks to represent a class of "all natural persons with Michigan, Ohio, Kentucky or Tennessee addresses who were sent a solicitation to refinance a credit card balance (whether in the form represented by Exhibit A to the complaint or otherwise), which did not disclose as a prepaid finance charge amounts to be included in the new credit card balance but not disbursed to the

3

addressee's creditor, and which was sent between July 27, 2008 and August 16, 2009 (inclusive) – but not including any person who accepted the offered refinancing" (Dkt 13).

In September 2009, all parties requested a Pre-Motion Conference before this Court, with plaintiff proposing to file a motion for class certification and defendants proposing to file joint motions to dismiss for plaintiff's failure to state a claim under either federal act (Dkts 13-17). At the Pre-Motion Conference held on October 26, 2009, the parties agreed to address the class certification issue after this Court's resolution of defendants' proposed motions to dismiss (Dkts 22-23). The Court therefore issued a briefing schedule only as to defendants' proposed dispositive motions (Dkt 22).

The parties filed their motion papers in December 2009 (Dkts 30-38), and each party has also since provided this Court with new authorities to consider (Dkts 39-43). Having fully considered the parties' motion briefs, the Court determines that oral argument is unnecessary to its resolution of the motions. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendants filed their Motions to Dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim. In deciding a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir. 2008). The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 557, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___U.S. ___; 129 S. Ct. 1937, 1949 (2009).

**B. Discussion**

1.  *Plaintiff Has Not Stated a Claim Under the FDCPA*

The FDCPA and the TILA were enacted for different purposes. Congress enacted the TILA in 1968 with the broad purpose of promoting the informed use of credit by assuring meaningful disclosure of credit terms to consumers. 15 U.S.C. § 1601(a); *Baker v. Sunny Chevrolet, Inc.,* 349 F.3d 862, 865 (6th Cir. 2003). Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* ___ U.S. ___; 130 S. Ct. 1605, 1608 (2010).

The FDCPA has been characterized as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages. *Fed. Home Loan Mortg. Corp. v. Lamar,* 503 F.3d 504, 513 (6th Cir. 2007). In contrast, TILA liability arises when a creditor fails to make the required disclosures "before consummation of the transaction," defined as "the time that a consumer becomes contractually obligated on a credit transaction." *United States v. Petroff-Kline,* 557 F.3d 285, 296 (6th Cir. 2009).

Plaintiff makes clear that he brings his claim under only the FDCPA, specifically 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" (Dkt 33 at 7, 9, 12, 15).

5

Indeed, defendants point out that plaintiff lacks standing to bring an independent claim under the TILA because plaintiff did not open a credit card account or suffer any actual damages (Dkt 32 at 17-19), a point plaintiff concedes (Dkt 33 at 22 n.6, 28).

Plaintiff's claims are "under the FDCPA for a false statement made in a debt collection attempt" (Dkt 33 at 22 n.6). According to plaintiff, the alleged false statement is defendants' misstatement – or failure to disclose – the true cost of the offered credit card inasmuch as defendants did not disclose the money that PCB would retain for its role in the credit card program (*id.* at 12, 25). Plaintiff opines that "[w]hile debt collection is normally subject to the FDCPA, where the means selected to attempt collection is an offer of a new line of credit to be used to pay off the debt, TILA also applies" (Dkt 33 at 18). Defendants argue that plaintiff is trying to "piggyback supposed TILA requirements into the FDCPA" (Dkt 34 at 8). Plaintiff responds that "defendants are trying to get away with making a false statement during a debt collection attempt" (Dkt 33 at 12).

The parties cite no case law from the Sixth Circuit Court of Appeals deciding whether alleged noncompliance with the TILA may properly state a claim for liability under the FDCPA. Defendants rely on *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470 (7th Cir. 2007), where the Seventh Circuit Court of Appeals rejected the plaintiff's argument that it is "unfair" or "unconscionable" for purposes of the FDCPA for a debt collector to violate any other rule of positive law, such as the alleged violation of the Social Security Act at issue in *Beler*. 480 F.3d at 473-74 (affirming the district court's decision to grant the defendant summary judgment). The Seventh Circuit reasoned that the FDCPA "creates its own rules (or authorizes courts and the FTC to do so)" and does not so much as "hint at being an enforcement mechanism for other rules of state and federal law." *Id.* at 474.

As defendants point out in their supplemental authority, a district court extended *Beler* on facts similar to those at bar, holding that it was "irrelevant" to the plaintiff-debtor's FDCPA action whether the TILA required the defendant-bank to disclose how much the defendant-debt purchaser was willing to accept to settle the plaintiff's debt. *Miller v. NCO Portfolio Management, Inc.,* No. 1:09-cv-00616-JMS, 2010 WL 2671910, *1 (S.D. Ind., June 28, 2010) (granting the defendants' motions to dismiss). The court concluded that "[i]f [the plaintiff] thinks the defendants violated the TILA by not disclosing that information, she should sue under that statute." *Id. See also Lee v. Northland Group,* No. 02 C 6083, 2003 WL 25765398 (N.D. Ill., Apr. 24, 2003) (deciding that an alleged violation of the TILA could not form the predicate for stating a claim under the FDCPA); *Neff v. Capital Acquisitions & Mgmt. Co.,* 238 F. Supp. 2d 986 (N.D. Ill. 2002) (same); and *Robb v. Capital Acquisitions & Mgmt. Co.,* No. 02 C 4829, 2002 WL 31654941 (N.D. Ill., Nov. 21, 2002) (same), aff'd on other grounds 352 F.3d 1118 (7th Cir. 2003).

For his part, plaintiff relies on a different Seventh Circuit case, *Randolph v IMBS, Inc.,* 368 F.3d 726 (7th Cir. 2004), which plaintiff opines stands for the proposition that "*all* laws that apply to an activity must be followed" (Dkt 33 at 18 [emphasis in original]). The decision in *Randolph,* which was authored by the same appellate judge who wrote *Beler,* does not necessarily help plaintiff. The Seventh Circuit in *Randolph* disagreed with the trial court's decision that the Bankruptcy Code displaced or "preempted" the FDCPA. 368 F.3d at 730-32. The Seventh Circuit instead found that debt collectors could comply with both statutes. *Id.* A general rule of law that compliance with two statutes is possible, however, does not support plaintiff's more specific proposition here that defendants' alleged noncompliance with the TILA states a claim for liability under the FDCPA.

7

Indeed, that specific proposition was rejected by the Ninth Circuit Court of Appeals in *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir. 2002), where the plaintiff, a debtor discharged from bankruptcy, sought to use the FDCPA to enforce a provision of the Bankruptcy Code, 11 U.S.C. § 524, which provides that discharge under Title 11 of the Code operates as an injunction against collecting debt as a personal liability of the debtor. The Ninth Circuit found that nothing in either the Bankruptcy Code or the FDCPA persuaded it that Congress intended to allow debtors to bypass the Code's scheme when it enacted the FDPCA. 276 F.3d at 510. The Ninth Circuit held that "[t]o permit a simultaneous claim under the FDCPA would allow through the back door what [the plaintiff] cannot accomplish through the front door – a private right of action." *Id.* The Ninth Circuit concluded that "[b]ecause [the plaintiff's] remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded." *Id.* at 511.

In sum, while there is apparently no Sixth Circuit case law addressing whether alleged noncompliance with the TILA states a claim for liability under the FDCPA, the case law discussed is instructive. The Court is persuaded that the FDPCA is not properly used as an enforcement mechanism for the TILA. The Court therefore holds that plaintiff has not stated a claim under the FDCPA by alleging a violation of the TILA.

2.  *Plaintiff Has Not Stated a Violation of the TILA*

However, even assuming a claim under the FDCPA could be stated by alleging a violation under the TILA, the Court agrees with defendants that plaintiff's complaint also fails to state a claim because he has not pleaded facts plausibly supporting a TILA violation in this case.[2] The section

---

[2] Defendants also argue (1) that plaintiff fails to state any claim under the FDCPA against PCB where PCB is a creditor, not a debt collector (Dkt 32 at 17-20); and (2) that plaintiff fails to state a claim under the TILA against LVNV, Resurgent, and Alegis where those three defendants

of the TILA principally involved on the facts here is 15 U.S.C. § 1637. Subsection (a) of the statute requires creditors to make eight specific disclosures, as applicable, "before opening any account under an open end consumer credit plan." 15 U.S.C. § 1637(a). Regulation Z, a regulation promulgated by the Federal Reserve Board to implement the TILA, 15 U.S.C. § 1604(a), specifies in pertinent part that these initial disclosures must be made "before the first transaction is made under the plan." 12 C.F.R. § 226.5(b)(1). Because plaintiff did not open an account or make a transaction in this case, plaintiff cannot properly plead a duty to disclose information under 15 U.S.C. § 1637(a). *See, e.g., Muro v. Target Corp.,* 580 F.3d 485, 493-94 (7th Cir. 2009) (determining that the plaintiff's § 1637(a) claim lacked merit where she admitted that she never activated the credit card, never incurred any fees on the credit card, and never made any charges to the credit card).

Plaintiff also makes reference to subsection (c)(1) of the statute, which requires creditors to make disclosures in "direct mail applications and solicitations" relating to annual percentage rates, annual and other fees, grace period, balance calculation method, cash advance fee, late fee, and over-the-limit fee. 15 U.S.C. § 1637(c)(1). However, plaintiff does not identify a required disclosure under this subsection that defendants failed to make.

Also of relevance is 12 C.F.R. § 226.5a, a part of Regulation Z that governs "Credit and charge card applications and solicitations." Paragraph (c), which addresses "Direct mail and

---

are not creditors or card issuers, but debt collectors (Dkt 32 at 7-9). Plaintiff responds that the defendants were participating in a "common scheme" from which they would all benefit (Dkt 33 at 8, 16-17, 22). Even if some but not all of these defendants were properly encompassed by one federal act to the exclusion of the other federal act, the Court's analysis herein compels dismissal of plaintiff's entire complaint against all of them. Therefore, the Court has not reached defendants' alternative arguments for dismissal.

electronic applications and solicitations," provides that "[t]he card issuer shall disclose the applicable items in paragraph (b) of this section on or with an application or solicitation that is mailed to consumers." 12 C.F.R. § 226.5a(c). Paragraph (b), in turn, delineates fifteen required disclosures. The only "finance charge" required to be disclosed is the "fixed finance charge" mentioned in 12 C.F.R. § 226.5a(b)(3). Defendants identified a Minimum Finance Charge of $.50 within the Table of the offer, titled "IMPORTANT RATE AND FEE DISCLOSURES."

Plaintiff alleges that the amount "retained" by PCB, which he surmises based on industry practice is more than 80 percent of the credit offered to him, constitutes a "prepaid" finance charge that should have been disclosed (Compl. ¶¶ 42-45). Plaintiff opines that the credit card program is "not free," and that the cost is borne by, and thereby "imposed" on, the consumer in the form of an Annual Percentage Rate of 19.9 percent, when payments are made on the new credit card (Dkt 33 at 10, 23). Plaintiff argues that defendants improperly hid from consumers the amount PCB received for its role in the credit card program (Dkt 33 at 24).

Regulation Z defines "prepaid finance charge" as "any finance charge paid separately in cash or by check before or at consummation of a transaction, or withheld from the proceeds of the credit at any time." 12 C.F.R. § 226.2(a)(23). "Credit," in turn, is defined as "the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14). Plaintiff has not pleaded facts plausibly supporting the existence of an undisclosed "prepaid finance charge." Whatever the division of the $3,000 settlement among defendants, the division would not have instituted a separately paid "charge" or an amount withheld from the proceeds of the credit extended. As defendants point out, whatever amount LVNV chooses to accept as part of its agreement with

defendants will be borne by LVNV (Dkt 32 at 12). Plaintiff has not pleaded facts that allow the Court to draw a reasonable inference that defendants are liable for the misconduct he alleges.

In sum, even if plaintiff may properly state a claim under the FDCPA by alleging a violation of the TILA, he has not alleged a disclosure violation under TILA to support his premise of a "false statement" under the FDCPA.

### III. CONCLUSION

For the foregoing reasons, the Court grants defendants' Motions to Dismiss. As the Court's decision resolves all pending claims, a Judgment will be entered consistent with this Opinion and Order. *See* FED. R. CIV. P. 58. Accordingly:

**IT IS HEREBY ORDERED** that defendants' Motions to Dismiss (Dkts 30 & 31) are GRANTED.


DATED: August 2, 2010                    /s/ Janet T. Neff
                                         JANET T. NEFF
                                         United States District Judge